Ralph WELLS, Plaintiff-Appellee
Appellant,

v.

SOUTHERN AIRWAYS, INC.,
Defendant-Appellee,

Air Line Pilots Association, International,
Defendant-Appellant.

No. 77–2996.

United States Court of Appeals,
Fifth Circuit.

April 28, 1980.

J. R. Goldthwaite, Jr., Atlanta, Ga., Michael E. Abram, Robert S. Savelson, New York City, for Air Line Pilots Ass'n.

William M. Pate, Atlanta, Ga., for Ralph Wells.

Erle Phillips, Robert W. Ashmore, Atlanta, Ga., for Southern Airways, Inc.

Before BROWN, HILL and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

Ralph Wells, Plaintiff below, is a former pilot for Southern Airways, Inc. (Southern), employed by them from June 1960 until his discharge in 1969. The Air Line Pilots As-

sociation, International (ALPA) is a labor organization representing airline pilots, under the Railway Labor Act, on almost all United States airlines, including Southern. Although ALPA is Wells' authorized bargaining representative, Wells has never been a member of ALPA, and in fact Wells worked as a pilot for Southern for the duration of an ALPA-sanctioned pilots' strike against the airline between 1960 and 1962. Wells was discharged by Southern in February 1969, based on written charges of pilot incompetence. He filed a grievance and retained his own counsel, never making a request to ALPA for assistance. In accordance with the collective bargaining agreement between Southern and ALPA, Wells presented his grievance to a five-person System Board of Adjustment. The Board found that Southern's termination of Wells was justified, and on April 6, 1970, Wells challenged this determination in district court. The court upheld Wells' claim that the Board procedure denied him due process, and ordered another hearing.

■ On appeal, this court reversed, *Wells v. Southern Airways, Inc.*, 517 F.2d 132 (5th Cir. 1975). Wells' federal court action, however, had alleged not only that he was unjustly terminated by the airline, but also that ALPA had breached the duty of fair representation it owed him. Under the rule of *Czosek v. O'Mara*, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970), that claim is wholly outside the jurisdiction of a System Board of Adjustment. Therefore, the panel's determination that the System Board hearing comported with due process, and was therefore final and binding on all parties, did not necessarily resolve Wells' distinct claim against the union, although obviously the issues raised by the claim against the airline and those raised by the claim against the union were intertwined. Accordingly, the panel modified its order, and remanded the case to the district court to permit Wells to present his claim against the union for breach of the duty of fair

representation, *Wells v. Southern Airways, Inc.*, 522 F.2d 707 (5th Cir. 1975). On remand, Wells rested upon the pleadings and record adduced in the former trial. The district court, relying on the intervening decision by the Supreme Court in *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), ruled that the failure of ALPA to designate as its representatives on the System Board of Adjustment arbitrating Wells' grievance persons who were not "institutionally" hostile to Wells amounted to a breach of ALPA's duty of fair representation, proximately causing Wells' termination, and awarded Wells $365,500 compensatory damages and $150,000 punitive damages.[1]

Wells makes two distinct breach of the duty of fair representation claims. The first is that ALPA wrongfully brought about his discharge. His second claim is that the union breached its statutory duty to him when it appointed as the union designees to the System Board two members of ALPA who had participated in the pilots' strike of 1960–62. Both claims involve Wells' contention that ALPA is "institutionally" hostile to him because of his activities as a strikebreaker during the 1960–1962 pilots' strike.

■ Wells' first claim can be disposed of summarily. To prevail on any claim asserting a breach of the union's statutory duty of fair representation, a plaintiff must demonstrate that the *union's* conduct towards him is arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967); *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). In this case, however, Wells' alleged incompetence was brought to light by individual members of the union, and there is absolutely no evidence in the record to suggest any specific plan or concerted activity on the part of the union to generate those complaints. In fact, it ap-

1. An award of punitive damages against a union for breach of the duty of fair representation is *per se* invalid. *International Bhd. of Electri-* *cal Workers v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979).

pears that Wells himself reported the first safety violation that played a major part in his discharge, his take-off overweight from the Tallahassee Airport on January 28, 1969. On January 31, a Southern employee assigned to fly as Wells' co-pilot, adverting to the Tallahassee incident and to other occurrences in Wells' past, declined to accept the assignment except under written protest. Southern's Chief Pilot determined that the better course was to take the flight himself and to administer during the flight a routine test of Wells' ability. Normally these checks, called "line checks," are administered at six-month intervals. Southern's Vice President for Flight Operations testified, however, that a special line check would normally be administered following a report of an incident like the overweight Tallahassee take-off. The Chief Pilot considered that Wells' performance on the specially scheduled line check was deficient, and as a consequence of that negative evaluation Wells was required to undergo a special proficiency check on February 4 conducted by Southern's Vice President for Flight Operations. Wells' performance on the proficiency check was also characterized as unsatisfactory, and therefore he was removed from duty as a line pilot. Thereafter, taking into consideration the three events just detailed and Wells' overall record with the airline, Southern terminated Wells. Upon our review of the record we can discern no basis for a finding that the union was causally implicated in bringing to light the alleged deficiencies that resulted in Wells' discharge. Even if some members of the union were virulently hostile to Wells, individual union members have no representational duties to other members of the bargaining unit. The duty of fair representation is incumbent upon the labor organization only, and Wells has not established that any conduct by the union was involved in the events leading up to his discharge.

Wells' second claim against the union is more problematical. Wells maintains that the union breached its statutory duty of fair representation when, upon his appeal of his termination to a five-person System Board of Adjustment, the union designated as its representatives on that Board persons who were institutionally hostile to Wells. Wells has made out no claim that any individual member of the Board was biased against him, a fact noted by the prior panel of this court that decided Wells' challenge to the finality of the Board determination on due process grounds, 517 F.2d 134–35. Although the Railway Labor Act expressly provides that "[n]o arbitrator [except the neutral arbitrator] shall be incompetent to act as an arbitrator because of his interest in the controversy to be arbitrated, or because of his connection with or partiality to either of the parties to the arbitration," 45 U.S.C. § 157, Third (d), the Act also imposes upon the System Board a duty to give the parties "a full and fair hearing," 45 U.S.C. § 157, Third (b). Read in conjunction, the two quoted provisions of § 157 suggest that Congress intended to impose on individual arbitrators a duty to adjudicate particular cases fairly without regard to their institutional predilections. Arbitration is a quasi-judicial function, and we have construed the Railway Labor Act to require proceedings before System Boards of Adjustment to comport with due process. *See, e. g., Wells v. Southern Airways, Inc.,* 517 F.2d 132, 134–35 (5th Cir. 1975). Bias or hostility on the part of any member of a System Board sufficient to amount to a denial of due process in the arbitration is sufficient to invalidate an award by that Board, *Southern Pac. Co. v. Wilson,* 378 F.2d 533, 536–37 (5th Cir. 1967). To our minds, the union's choice of representatives to a System Board cannot be said to have worked an injury upon an employee-grievant unless the choice can be shown to have affected the fairness and reliability of the adjudicatory process. In such a case, the decision of the Board would have to be overturned on due process grounds. Where the union's choice of representatives has not subverted the fairness of the proceedings, however, the employee-grievant *a fortiori* has not been injured by the union's conduct, for he is entitled to nothing but a fair and impartial hearing. An injury by reason of

union conduct is a necessary element for recovery on a claim for monetary damages based on the union's breach of its duty of fair representation. In a recent opinion prohibiting an award of punitive damages against a union for breach of its duty of fair representation, the Supreme Court in *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979), underscored the principle that a union is liable to individual employees for breach of its duty of fair representation only "for injuries caused by union misconduct . . . ." 442 U.S. at 50, 99 S.Ct. at 2127, 60 L.Ed.2d at 706. In *Vaca v. Sipes* the court noted that "[t]he governing principle . . . is to apportion liability between the employer and the union according to the damage caused by the fault of each." 386 U.S. at 197, 87 S.Ct. at 920.

■ The question whether Wells' hearing before the System Board comported with due process was presented to the earlier panel in this case, and that panel held that the hearing did satisfy due process standards. That decision stands as the law of the case, and establishes that Wells was not injured by the union's choice of Board representatives. The district court's reliance upon *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), as an intervening Supreme Court decision at odds with the prior panel's determination of the due process issue fundamentally misconstrues *Hines*. The breach of the union's duty of fair representation alleged in *Hines* concerned the union's conduct as the representative of the employee before an arbitral body, not the conduct of the union in selecting its representatives to that arbitral body. Since Wells freely exercised his option to retain private counsel to present his grievance to the System Board, *Hines* simply does not speak to the issue here.

Because he has not shown that the union was involved in bringing about his discharge, Wells cannot recover on that aspect of his claim; and absent a showing that the union's choice of representatives to the Sys-

tem Board deprived him of a hearing to which he was entitled—one that comported with due process—Wells cannot recover on his claim that the union's choice of representatives to the System Board amounted to a breach of its statutory duty of fair representation. Accordingly, the judgment of the district court is reversed.

REVERSED.