779 F.2d 206
 121 L.R.R.M. (BNA) 2049, 103 Lab.Cas. P 11,731
 J.J. WITMEYER, Jr., Appellant,
v.
BROTHERHOOD OF RAILWAY AIRLINE & STEAMSHIP CLERKS, FREIGHT
HANDLERS, EXPRESS & STATION EMPLOYEES, an
unincorporated association, and Richard
I. Kilroy a/k/a Dick Kilroy, Appellees.
 No. 85-1084.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 10, 1985.
Decided Dec. 12, 1985.
 
 John J. Witmeyer, III (Ford, Marrin, Esposito & Witmeyer, New York City, Martin S. Protas; Protas, Kay, Spivok & Protas, Rockville, Md., on brief), for appellant.
 Mitchell M. Kraus, Rockville, Md. (Joseph Guerrieri, Jr., Highsaw & Mahaoney, P.C., Washington, D.C., on brief), for appellees.
 Before SPROUSE and WILKINSON, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 SPROUSE, Circuit Judge:
 
 
 1
 J.J. Witmeyer, Jr. filed suit in federal district court after he was discharged from his job as an assistant organizing director of the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees (BRAC) for opposing the policies and re-election candidacy of incumbent international president Richard I. Kilroy.[1] In his complaint naming BRAC and Kilroy as defendants, Witmeyer asserted several theories for the requested damages and injunctive relief, including violation of the "free speech" provision of the Landrum-Griffin Act,[2] 29 U.S.C. Sec. 411(a)(2), violation of contractual rights to free speech guaranteed under the BRAC constitution, and commission of a prima facie tort in violation of Maryland law. After allowing limited discovery and the submission of affidavits, the district court granted summary judgment in favor of BRAC and Kilroy on all claims, from which Witmeyer brings this appeal. We affirm.
 
 
 2
 Witmeyer's principal claim is that his discharge in retaliation for the position he took at the BRAC convention effectively denied him the right of free speech guaranteed by the Landrum-Griffin Act. The Supreme Court in Finnegan v. Leu, 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982), however, has held that the discharge of a policymaking or confidential union employee does not violate the Act, even when that discharge is in retaliation for a position taken in a union election. Finnegan left open the question of whether a different result might be reached in a case involving union staff members not occupying such key positions. Id. at 441, n. 11, 102 S.Ct. at 1873, n. 11. Thus, the initial issue in determining Witmeyer's Landrum-Griffin "free speech" argument is whether Witmeyer's organizing activities constitute policymaking or confidential employment as contemplated by the Supreme Court in Finnegan. If so, it will not be necessary to consider the question reserved in footnote 11 of that decision. Witmeyer contends that he was not employed in a policymaking or confidential position. He characterizes his work as an organizer as simply ministerial. We agree with the district court that Witmeyer's own description of his duties clearly brought him under the rule adopted in Finnegan.
 
 
 3
 Witmeyer was employed by Kilroy's predecessor in 1977. In 1979 Witmeyer was promoted to Assistant Director of Organizing, reporting directly to an International Vice President of BRAC who was the Director of Organizing. In his affidavit filed in opposition to BRAC's motion for summary judgment, Witmeyer described his primary duties as meeting with workers and employers, promoting BRAC as the representative of such workers, and representing BRAC in certification and other disputes before the National Labor Relations Board (NLRB). In addition to his duties as an organizer, Witmeyer spent a portion of his working time playing an important role in other union activities in his capacity as an elected District Chairman of the Allied Services Division of BRAC.[3]
 
 
 4
 The district court recognized that much of the dispute between the parties as to the characterization of Witmeyer's position arose from the fact that, in addition to being a salaried union employee, Witmeyer was an elected union officer and his opposition to Kilroy was expressed in Witmeyer's capacity as an elected representative to the Grand Lodge convention. Nevertheless, the district court, relying solely on the facts undisputed by Witmeyer, found that he could properly be termed a policymaker on the basis of his duties as an organizer, independent of his role as an elected union officer.
 
 
 5
 In attempting to show that the organizer's position was ministerial in nature, Witmeyer points out that he had no direct contact with Kilroy, reporting instead to the international vice president in charge of organizing; that he was stationed hundreds of miles from union headquarters; and that he did not consult directly with Kilroy about any policymaking or confidential matters. It is apparent, however, that Witmeyer's duties as an organizer necessarily provided him with the opportunity to make union policy. In meeting with prospective union members and their employers, Witmeyer was, in effect, the union. The union was bound by his representations at that stage. The success of the union in gaining membership strength and establishing meaningful relations with employers depended on Witmeyer's performance as an organizer. Witmeyer's position as an organizer also required him to represent the union before the NLRB in union certification disputes in order to assure that BRAC would be recognized as the representative of the newly organized employees. BRAC conventions have repeatedly passed resolutions emphasizing the importance of union organizing efforts and placing responsibility for these campaigns directly with the International President.
 
 
 6
 At a bare minimum, it is clear that Witmeyer's duties as an organizer involved the implementation of important policies adopted by Grand Lodge conventions. We agree with the Eleventh Circuit that
 
 
 7
 [t]he language in Finnegan ... suggests that its holding is not limited to individuals who actually set out formal policy. The Court uses the terms "administrators" and "staff" to describe the type of officials whose jobs are not protected by the LMRDA. We therefore think Finnegan applies to union employees who are instrumental in implementing union policy, as well as those who formulate policy.
 
 
 8
 Rutledge v. Aluminum, Brick & Clay Workers, Int'l. Union, 737 F.2d 965, 967 (11th Cir.1984). Accord Cehaich v. International Union United Auto Workers, 710 F.2d 234 (6th Cir.1983). Other circuits have applied the holding in Finnegan to union employees in other than top management positions. See, e.g., Childs v. Local 18, Int'l, Brhd. of Electrical Workers, 719 F.2d 1379 (9th Cir.1983) (business representative); Sullivan v. Laborers Int'l. Union, 707 F.2d 347 (8th Cir.1983) (business manager).
 
 
 9
 We conclude that none of the free speech rights guaranteed by the Landrum-Griffin Act were intended to protect Witmeyer's position as an Assistant Director of Organizing. As Chief Justice Burger stated for the Court in Finnegan, Title I of the Landrum-Griffin Act
 
 
 10
 does not restrict the freedom of an elected union leader to choose a staff whose views are compatible with his own. Indeed, neither the language nor the legislative history of the Act suggests that it was intended even to address the issue of union patronage. To the contrary, the Act's overriding objective was to ensure that unions would be democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections. See Wirtz v. Hotel Employees, 391 U.S. 492, 497 [88 S.Ct. 1743, 1746, 20 L.Ed.2d 763] (1968). Far from being inconsistent with this purpose, the ability of an elected union president to select his own administrators is an integral part of ensuring a union administration's responsiveness to the mandate of the union election.
 
 
 11
 Finnegan, 456 U.S. at 441, 102 S.Ct. at 1873.
 
 
 12
 Witmeyer's second major contention is that, even if his organizing position is classified as policymaking under Finnegan, his LMRDA free speech rights as a rank and file member of the union have been infringed. After he was fired from the organizer's position, Witmeyer was informed by BRAC that health insurance coverage normally ceased upon termination of employment for any reason except taking staff retirement. Witmeyer, feeling economic pressure, gave notice of his retirement in order to maintain his insurance coverage.[4] BRAC retirees are not eligible to hold office, to serve as delegates to the Grand Lodge convention, or to vote in BRAC elections.[5] Thus, Witmeyer alleges, he has been deprived of his membership rights because Kilroy's retaliatory discharge forced him into retirement. The district court found that Witmeyer made the decision to retire because of its economic advantages. We agree with the district court and reject Witmeyer's argument that his union membership rights, as such, were infringed by the discharge.
 
 
 13
 We also agree with the district court that Witmeyer does not have a valid contractual claim under the BRAC constitution. His free speech guarantees under the union constitution are no broader than those contained in Section 101 of the Landrum-Griffin Act.[6] Witmeyer claims that his retaliatory discharge violated his right to speak out at the Grand Lodge convention. Witmeyer does not argue, however, that he was denied the right to speak freely at the convention. In Finnegan, the Supreme Court observed that the plaintiffs were not prevented from exercising their free speech rights and found no infringement of those rights even though they might be forced to "choos[e] between their rights of free expression ... and their jobs." Finnegan, 456 U.S. at 440, 102 S.Ct. at 1873, citing Retail Clerks Union Local 648 v. Retail Clerks Int'l. Assn., 299 F.Supp. 1012, 1021 (D.C.1969). The same union constitution which guaranteed Witmeyer his free speech gave Kilroy the right to employ and discharge union staff at will. The free speech guarantees of the union constitution in this instance simply cannot be rewoven into an employment contract.
 
 
 14
 We likewise find no merit in Witmeyer's remaining arguments. There is no evidence that his discharge was part of a plan for generally suppressing dissent within the union and his tort claims are without legal foundation. We agree with the district court that Witmeyer has not alleged any tort recognized under Maryland law. There is no authority under state law for imposing liability for a "prima facie " tort as theorized by Witmeyer. Similarly, there is no basis for imposing liability on Kilroy for maliciously interfering with an alleged contract for separation benefits. Kilroy was BRAC's delegated agent for the purposes of Witmeyer's employment and benefits, thus, he cannot be held liable in tort for violating a contract to which he is a principal party. The judgment of the district court is affirmed.
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 For the purposes of the summary judgment motion below, Kilroy admitted that he discharged Witmeyer in retaliation for Witmeyer's opposition at the 1983 BRAC Grand Lodge convention
 
 
 [2]
 The Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. Sec. 401 et seq. (1982). The Act is also known as the LMRDA
 
 
 [3]
 The union allowed Witmeyer to carry out the duties of his elected office during normal working hours and reimbursed his expenses for these functions. Witmeyer coordinated major strikes, negotiated more than a dozen collective bargaining agreements, served as a member of the BRAC European Study Group, and handled numerous arbitrations. Although some of these duties involved union members outside of Witmeyer's district and although Witmeyer had in the past characterized these efforts as performed "as a Grand Lodge employee," for the purpose of this appeal, we treat all these functions as being carried out in Witmeyer's capacity as an elected District Chairman
 
 
 [4]
 Witmeyer, of course, was free to seek a job with a BRAC organized employer in order to maintain his insurance coverage. As an applicant without seniority, Witmeyer, age 62, would have only been eligible for an entry level unionized job
 
 
 [5]
 In spite of these provisions in the BRAC constitution, it is undisputed that Witmeyer has continued to perform many of his duties as District Chairman
 
 
 [6]
 Article 2, Section 2 of the BRAC constitution states that each delegate "shall be entitled to a voice and vote on all matters" coming before the convention