Fletcher ALLEN

v.

**ALLIED PLANT MAINTENANCE COMPANY OF TENNESSEE; International Union of Operating Engineers, AFL CIO; Local 912, International Union of Operating Engineers.**

No. 3–85–0031.

United States District Court,
M.D. Tennessee,
Nashville Division.

May 2, 1986.

George E. Barrett, Barrett & Ray, P.C., Brad Rayson, Henry Haile, Haile and Buffaloe, Nashville, Tenn., for Intern. Union of Operating Engineers, AFL–CIO.

Charles Hampton White, Cornelius & Collins, Nashville, Tenn., Robert I. Gosseen, Gallagher & Sullivan, New York City, for Allied Plant Maintenance Co. of Tennessee.

Cecil D. Branstetter, C. Dewey Branstetter, Jr., Nashville, Tenn., Branstetter, Kilgore, Stranch & Jennings, for Intern. Union of Operating Engineers, AFL–CIO and Local 912, Intern. Union of Operating Engineers, AFL–CIO.

## MEMORANDUM

WISEMAN, Chief Judge.

Before the Court are motions for summary judgment by each of the defendants and a motion by defendant Local 912 to strike plaintiff's jury demand and request for punitive damages. This case arises out of Allen's discharge by Allied Plant Maintenance Company ("Allied") which the plaintiff alleges was effectuated by a conspiracy among the defendants. Plaintiff alleges violations of 42 U.S.C. § 1985(2); section 7 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 157; section 101 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411; and the duty of fair representation ("DFR") under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, as a result of the conspiracy to terminate his employment and to provide him ineffective grievance proceedings. Plaintiff also seeks pendent jurisdiction over a state claim for breach of an employment contract in violation of Tennessee Code Annotated § 47–50–109. Upon review of the facts and law of the case, the Court concludes that summary judgment is appropriate on all claims except the DFR claim. The Court also denies the motion to strike plaintiff's jury demand, and grants the motion to strike plaintiff's request for punitive damages.

*Facts*

In resolving defendants' motions for summary judgment, the Court must view the facts in the light most favorable to the plaintiff. *See, e.g., SEC v. Blavin,* 760 F.2d 706, 710 (6th Cir.1985). Plaintiff Allen was an employee of defendant Allied from 1975 until his discharge on July 11, 1984. Allied performs maintenance services at the Bridgestone Tire and Rubber Company ("Bridgestone") Plant in Lavergne, Tennessee. Allen also was a member of defendant International Union of Operating Engineers ("IUOE" or "International") and defendant Local 912 of the IUOE ("Local 912"), as well as chairman of the Allied Workers Committee, a group of Allied employees who were dissatisfied with the representation received from Local 912 and sought to replace Local 912 as the collective bargaining representative for Allied's production and maintenance employees. On July 11, 1984, Allen was dis-

charged by Allied. Defendants contend the reason for his discharge was the theft of company property by his unauthorized use of an Allied photocopying machine in apparent disregard for previous warnings not to use the machine. Allen claims that the photocopying machine, which he had used previously for Allied Worker Committee business, belonged to Bridgestone and that he had permission to use it. Local 912 thereafter conducted grievance proceedings as provided for in the collective bargaining agreement.[1] When these proceedings proved unsuccessful, Local 912 submitted the dispute to arbitration. On October 2, 1985, an arbitration was held between Local 912 and Allied, and on October 5, 1985, the arbitrator issued an opinion upholding the discharge of the plaintiff. On January 11, 1985, Allen filed this action.

As Allen properly points out, "[t]his is a discharge case."[2] Plaintiff limits his claims to those arising from his discharge and the alleged abuses which occurred during the grievance process and arbitration. Allen makes no claim involving any of the defendants' actions which occurred more than six months before the filing of the suit.[3]

*State Contract and Civil Rights Claims*

The Court earlier dismissed plaintiff's claims alleging violations of T.C.A. § 47–30–109 and 42 U.S.C. § 1985(2) as to defendant International on International's motion to dismiss. *See Allen v. Allied Plant Maintenance Co.*, No. 3–85–0031, slip op. (M.D.Tenn. July 19, 1985). The state contract claim was dismissed as preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, because plaintiff's contract claim depends almost wholly on the labor agreement's interpretation. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Plaintiff does not dispute this ruling or challenge the arguments of Local 912 and Allied that

they are likewise entitled to disposition of this issue in their favor. Summary judgment therefore must be granted to defendants Local 912 and Allied on the plaintiff's state contract claim.

The Court also dismissed the plaintiff's civil rights claim as to defendant International on the grounds that he had made no allegations of a nexus between the alleged conspiracy and a federal court proceeding, nor had he alleged any class-based discriminatory animus. In his responses to defendants' motions, the plaintiff argues that the Court erred in this ruling. The complaint alleges that the defendants conspired to discharge the plaintiff in retaliation for his filing of a lawsuit in federal court a month before his discharge seeking a representation election to replace Local 912 with the Allied Workers Committee. This allegation, plaintiff contends, states a claim under 42 U.S.C. § 1985(2). The Court takes this opportunity to expand upon and affirm its earlier ruling that there was no allegation of any nexus.

The first part of section 1985(2), which is at issue in the instant case, states:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror ... [an action for damages will lie].

---

1. Allen contends that the fourth step of grievance proceedings, which would have involved the International, was never conducted, in violation of the duty of fair representation.

2. Plaintiff's Response to Local 912's Motion for Summary Judgment at 11.

3. Before July 11, 1984, was the date Allen was discharged.

The Court has very little guidance in interpreting section 1985(2). *See Brawer v. Horowitz,* 535 F.2d 830, 837 (3d Cir.1976) (construing the "perfidious syntax of § 1985(2) with some reserve" given the "dearth of authority to light the way"). Most of the decisions arising under section 1985 have involved section 1985(3). The proportionately few cases arising under section 1985(2) usually have focused on what is required to state a cause of action under the two parts of section 1985(2).[4] It is well settled that no specific allegation of a racial or other class-based discriminatory animus is required in order to state a claim under the first part of section 1985(2), which prohibits conspiracies to interfere with the administration of justice in federal courts. *See, e.g., Kush v. Rutledge,* 460 U.S. 719, 726–27, 103 S.Ct. 1483, 1488, 75 L.Ed.2d 413, 420 (1983); *Doherty v. American Motors Corp.,* 728 F.2d 334, 339 (6th Cir.1984). Such an allegation is necessary, however, to sustain an action under the second half of section 1985(2), which prescribes conspiracies to deny or interfere with equal protection rights. *See, e.g., Bretz v. Kelman,* 773 F.2d 1026, 1029–30 (9th Cir.1985); *Bradt v. Smith,* 634 F.2d 796, 801 (5th Cir.), *cert. denied,* 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 106 (1981). Plaintiff makes no allegation of a class-based animus.

In order to state a cause of action under the first part of section 1985(2), a plaintiff must allege a nexus between an alleged conspiracy and a federal court proceeding. *See Bradt,* 634 F.2d at 801; *Brawer,* 535 F.2d at 840. The plaintiff in the instant case fails to satisfy this threshold requirement. Of the few cases arising under section 1985(2), most have involved claims based on interference with a federal juror, or intimidation of a party or witness for the purpose of deterring him from appearing or testifying in federal court. *See, e.g., Dooley v. Reiss,* 736 F.2d 1392 (6th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 518, 83 L.Ed.2d 407 (1984) (allegation that defendants conspired to commit perjury and conceal evidence did not state a claim under section 1985(2) because the alleged actions did not seek to influence a federal juror by force, intimidation, or threat); *Chahal v. Paine Webber Inc.,* 725 F.2d 20 (2d Cir. 1984) (allegation that an expert witness had been threatened with loss of employment if he continued his participation in a federal securities case sufficient to state a claim under section 1985(2)); *Brawer,* 535 F.2d 830 (allegation that prosecutor and witness conspired to "influence" the jury by precluding them from considering complete and accurate evidence did not state a claim under section 1985(2) because the "influence" was too remote to fit within the scope of section 1985(2)). Almost no cases have involved the clause in the first part of section 1985(2) which creates a cause of action against individuals who conspire to injure a party or witness for having "attended or testified" in any court of the United States. This scarcity of authority is surprising in light of such a seemingly common claim as discharge in retaliation for having attended or testified in a federal action opposed by the employer.

Fortunately, one circuit has examined this clause at length and defined the term "attended" which determines the outcome

---

**4.** The full text of 42 U.S.C. § 1985(2) reads:

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment law-

fully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the law, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

It is generally agreed that the two parts of section 1985(2) are split by the semicolon.

of the instant case. *See Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340 (5th Cir.) (en banc), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981). The *Kimble* action was brought on behalf of all individuals who had been denied employment in the offshore oil industry allegedly because they previously had filed workers' compensation or personal injury claims against their former employers. The named plaintiff had been discharged allegedly because he had filed and won a previous personal injury suit against his former employer. The Fifth Circuit's *en banc* majority stated that the plain meaning of the word "attend" and the legislative history of section 1985(2) mandated the conclusion that an allegation of a conspiracy to retaliate against a person for filing a suit in federal court does not state a claim under section 1985(2).[5] The court included a "physical presence in court" requirement in the meaning of the word "attend." Noting the

atmosphere of violence and intimidation which was prevalent at the time of the original passage of section 1985(2) as part of the Ku Klux Klan Act, 17 Stat. 13 (1871), the Fifth Circuit stated that section 1985(2) "was intended to protect against direct violations of a party or witness's right to attend or testify in federal court. This clear congressional purpose is best served by construing the statutory language in its ordinary meaning so that only direct interference with the federal courts is prohibited in accordance with the general concerns enunciated by *Griffin [v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) ]." *Kimble*, 648 F.2d at 348. The *Kimble* dissent expressly disagreed. *Id.* at 343–54.[6]

█ This Court has carefully considered the opposing positions articulated in *Kimble*, as well as the legislative history of section 1985(2).[7] The Court finds that the

---

**5.** The Fifth Circuit's *en banc* decision followed two extensive opinions at the district and circuit court levels. The district court granted summary judgment to the defendants, holding that in order to state a claim under the second part of section 1985(2), a plaintiff must allege a racial or class-based animus, and that a claim of a conspiracy to deter a party or witness from attending or testifying in federal court must be supported by an allegation that the deterrence was accomplished by force, intimidation, or threat. *Kimble v. D.J. McDuffy, Inc.*, 445 F.Supp. 269 (E.D.La.1978), *aff'd in part & rev'd in part*, 623 F.2d 1060 (5th Cir.1980), *rev'd en banc*, 648 F.2d 340 (5th Cir.), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981). The district court further held that the *filing* of personal injury claims in federal or state court or workers' compensation claims did not constitute "attending or testifying" in federal court as required by section 1985(2). The court agreed that Congress ought to protect access to federal courts and statutorily prescribe conspiracies to retaliate against a person for using those courts, but concluded that section 1985(2) does not prohibit such conduct.

A divided panel rejected the district court's "narrow reading" of the phrase "attended or testified," while agreeing with the district court's other holdings. The panel held that "Congress undoubtedly intended to protect the whole course of justice, not just one segment of the system, the trial process. Thus, for the purposes of section 1985(2) an individual is deemed to have 'attended' a court of the United States from the moment that the person files a com-

plaint." *Kimble v. D.J. McDuffy, Inc.*, 623 F.2d 1060, 1068 (5th Cir.1980), *rev'd en banc*, 648 F.2d 340 (5th Cir.) *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981).

On this issue, the Fifth Circuit Court of Appeals sitting *en banc* reversed the panel by a vote of 16 to 7.

**6.** In a dissent to the Supreme Court's denial of certiorari on the *Kimble* case, Justice White recognized the significance of this issue. Justice White stated that "the intended scope of the term 'attending' can only be determined by reviewing the same legislative history as is involved in resolving the question of whether an action under section 1985(2) must allege class-based discrimination. Because these two questions are so related, I would grant review of petitioner's second question as well: Whether the term 'attending' includes the filing of a claim in federal court." *Kimble v. D.J. McDuffy, Inc.*, 454 U.S. 1110, 1114 n. 4., 102 S.Ct. 687,689 n. 4., 70 L.Ed.2d 651, 652 n. 4. (1981) (White, J., dissenting from denial of certiorari).

**7.** This Court has paid particular attention to the legislative history of section 1985(2) as expressed in *McCord v. Bailey*, 636 F.2d 606, 614–17 (D.C.Cir.1980), which the Supreme Court recognized as having been "accurately and persuasively" presented. *Kush v. Rutledge*, 460 U.S. 719, 727 n. 10, 103 S.Ct. 1483, 1488 n. 10, 75 L.Ed.2d 413, 420 n. 10 (1983). For other thorough discussions of the legislative history of section 1985(2), see *Keating v. Carey*, 706 F.2d 377, 385–86 (2d Cir.1983); *Scott v. Moore*, 680

position taken by the *en banc* majority in *Kimble* comports with both the clear language and legislative history of section 1985(2). The Court therefore adopts the reasoning of the *en banc* majority in *Kimble* that the filing of a suit in federal court does not state a claim under section 1985(2), which proscribes conspiracies to injure a party or witness for having attended or testified in federal court.[8] The *Kimble* dissent strains the meaning of the term "attend" and attempts to expand the ambit of section 1985 beyond the confines set by Congress. Permitting retaliation against a person for using the federal courts to right a perceived wrong demeans our court system and undermines justice; however, Congress has not yet taken the step of forbidding retaliatory conduct aimed at the filing of a federal suit or the assertion of a federal claim. Plaintiff's complaint is insufficient to state a claim under section 1985(2) because it hinges on alleged retaliation for the filing of a suit in federal court. Therefore, plaintiff in his complaint fails to allege a nexus between an alleged conspiracy and a federal court proceeding, and his section 1985(2) claim must be dismissed.

*Preemption*

Defendants also argue that plaintiff's allegations pursuant to section 7 of the NLRA, 29 U.S.C. § 157, are preempted by the exclusive jurisdiction of the National Labor Relations Board ("NLRB" or "Board").[9] The defendants' arguments to preclude the Court from consideration of this section are self-fulfilling. As a general rule, the Board has been designated by Congress as having exclusive and original jurisdiction over questions of representation or unfair labor practices in violation of the NLRA, and federal district courts have no such jurisdiction. *Lexington Cartage Co. v. International Brotherhood of Teamsters*, 713 F.2d 194, 195 (6th Cir.1983). In requiring that federal as well as state courts defer to the NLRB when an activity is "arguably subject" to section 7 or section 8 of the NLRA, 29 U.S.C. §§ 157, 158, the Supreme Court effects Congress's goal of a uniform national labor policy. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775, 783 (1959). The preemption doctrine, however, is subject to certain judicially-developed and legislatively-created exceptions. For discussions of these exceptions, see *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 188–89 & nn. 13–14, 98 S.Ct. 1745, 1753 & nn. 13–14, 56 L.Ed.2d 209, 220 & nn. 13–14 (1978), and *Amalgamated Association of Street, Electrical Railway & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 297–98, 91 S.Ct. 1909, 1923–24, 29 L.Ed.2d 473, 489 (1971). *See also Storey v. Local 327, International Brotherhood of Teamsters*, 759 F.2d 517, 522–23 (6th Cir.1985). One exception has been developed around the duty of fair representation. Jurisdiction over actions alleging a breach of the duty of fair representation is not exclusively vested in the NLRB, even though the breach may also be an unfair labor practice. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). District courts also have jurisdiction to hear claims alleging deprivations of plaintiffs' rights under the "bill of rights"

---

F.2d 979, 991–94 (5th Cir.1982), *rev'd sub nom. United Brotherhood of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Brawer*, 535 F.2d at 837–40.

8. The Court notes in passing that it has found two decisions which apparently presumed that the filing of a suit in federal court was the equivalent of an "appearance" for purposes of section 1985(2). *See Irizarry v. Quiros*, 722 F.2d 869 (1st Cir.1983); *Crawford v. City of Houston*, 386 F.Supp. 187 (S.D.Tex.1974). These opinions have no persuasive value in the instant action.

9. In paragraph 7 of his complaint, plaintiff alleges that his discharge was the result of a conspiracy among defendants "to deprive plaintiff of his right to self-organization and participation in concerted activities for the purpose of collective bargaining, granted by 29 U.S.C. Section 157 and to retaliate against plaintiff for attempting to exercise said rights through his efforts as Chairman for the [Allied Workers] Committee."

of Title I of the LMRDA, 29 U.S.C. §§ 411, 412, notwithstanding that a violation of 29 U.S.C. § 157 has also been alleged. *See Thomas v. Penn Supply and Metal Corp.*, 35 F.R.D. 17, 18–19 (E.D.Pa.1964).

▪ In the instant case, plaintiff alleges that the defendants conspired to discharge him in retaliation for his anti-union activities. This case involves conduct which arguably forms the basis for an unfair labor practice charge. *Cf. NLRB v. Midtown Service Co.*, 425 F.2d 665 (2d Cir.1970) (evidence supported Board's conclusion that employee would not have been dismissed but for her efforts in a decertification campaign which the employer opposed). The Court lacks subject matter jurisdiction to consider plaintiff's claims arising under sections 7 and 8 of the NLRA, 29 U.S.C. §§ 157, 158, the Board having exclusive jurisdiction over such claims. Jurisdiction is vested in this Court, however, over plaintiff's claims arising under section 101 of the LMRDA, 29 U.S.C. § 411, and the duty of fair representation under section 301 of the LMRA, 29 U.S.C. § 185.

### Union Members' Bill of Rights

Plaintiff's fourth claim alleges that his discharge was a direct result of a conspiracy among defendants to deprive the plaintiff of his rights of freedom of speech and assembly granted under section 101 of the LMRDA, 29 U.S.C. § 411. At the outset, the Court must determine what claims are to be considered. Plaintiff limits the scope of the section 411 claim to his discharge and the events surrounding the grievance proceedings and arbitration; no claims are asserted relating to events which occurred before July 11, 1984, the date on which the plaintiff was discharged (and precisely six months before this action was filed). Therefore, the Court need not consider Local 912's argument that this Court should apply the six-month statute of limitations found in section 10(b) of the NLRA, 29 U.S.C. § 160(b), to actions arising under Title I of the LMRDA, 29 U.S.C. § 411, 412.

The Court must determine whether section 101(a)(2) of the LMRDA applies to an action in which an employee of a corporation alleges that his employer discharged him in furtherance of a conspiracy with the local union and international union.[10] The primary objective of the LMRDA is to insure that unions are governed democratically and are responsive to the will of the union membership. It "places emphasis on the rights of union members to freedom of expression without fear of sanctions by the union, which in many instances could mean loss of union membership and in turn loss of livelihood." *Finnegan v. Leu*, 456 U.S. 431, 435–36, 102 S.Ct. 1867, 1870–71, 72 L.Ed.2d 239, 244 (1982).[11] In *Finnegan*, the Supreme Court rejected claims alleging violations of sections 101(a)(2), 101(a)(5), and 609 of the LMRDA, 29 U.S.C. §§ 911(a)(2), 411(a)(5) & 529, brought by appointed business agents who had been discharged from their jobs by a newly elected union president because they had supported his opponent during an election campaign. The Court held that "removal

10. Section 101(a)(2) of the Labor Management Reporting Disclosure Act (LMRDA) is part of what is commonly known as the Union Members' Bills of Rights. This section, codified at 29 U.S.C. § 411(a)(2), provides:

**Freedom of speech and assembly.**—Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: **Provided,** that nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

11. For a thorough discussion of the legislative history of Title I of the LMRDA, see *Finnegan*, 456 U.S. at 109–11, 102 S.Ct. at 1870–72, 72 L.Ed.2d at 714–15.

from appointive union employment is not within the scope of those union sanctions explicitly prohibited by § 609." *Id.* at 439, 102 S.Ct. at 1872, 72 L.Ed.2d at 246. The Court also held that Title I of the LMRDA "does not restrict the freedom of an elected union leader to choose a staff whose views are compatible with his own." *Id.* at 441, 102 S.Ct. at 1873, 72 L.Ed.2d at 247.

Decisions arising under Title I of the LMRDA since *Finnegan* almost without exception involve situations in which union officials have challenged their removal from union positions based on alleged violations of Title I, and almost without exception the ousted union officials have been unsuccessful. *Witmeyer v. Brotherhood of Railway Airline and Steamship Clerks,* 779 F.2d 206 (4th Cir.1985) (assistant organizing director); *Dolan v. Transport Workers Union,* 746 F.2d 733 (11th Cir.1984) (president of local); *Rutledge v. Aluminum, Brick & Clay Workers International Union,* 737 F.2d 965 (11th Cir. 1984) (regional director of the union); *Adams-Lundy v. Ass'n of Prof. Flight Attendants,* 731 F.2d 1154 (5th Cir.1984) (governing board members); *Childs v. Local 18, International Brotherhood of Electrical Workers,* 719 F.2d 1379 (9th Cir.1983) (business representative); *Cehaich v. International Union, United Auto Workers,* 710 F.2d 234 (6th Cir.1983) (benefits representative); *Sullivan v. Laborers Int'l Union,* 707 F.2d 347 (8th Cir.1983) (business manager); *Hodge v. Drivers Local Union 695,* 707 F.2d 961 (7th Cir.1983) (confidential secretary to union officer); *Parini v. International Brotherhood of Teamsters,* 568 F.Supp. 1246 (N.D.Ill.1983), *aff'd,* 749 F.2d 34 (8th Cir.1984) (business agent). These cases apply *Finnegan* 's general rule that a union *employee* who is discharged in such a way that does not affect his rights as a union *member* has no cause of action under section 102 of the LMRDA, 29 U.S.C. § 412, for asserting a Title I violation.[12]

See *Bloom v. General Truck Drivers,* 783 F.2d 1356, 1359 (9th Cir.1986).

▇ In contrast, the pleadings in the instant case contain no allegations of any infringement upon the plaintiff's rights as a union *member.* Allen was not discharged from any elected or appointed position in Local 912's hierarchy, nor was he discharged from the union's employment. Even if Allen's discharge from Allied's employment was the direct result of a conspiracy among the defendants, the plaintiff does not allege that he has been deprived of any privilege or incident of union membership. This obvious deficiency in the complaint necessitates the Court's finding that the plaintiff fails to state a cause of action under section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2).

### Duty of Fair Representation

Plaintiff's last claim alleges that the defendants breached the duty of fair representation ("DFR"). Under section 301 of the LMRA, 29 U.S.C. § 185, the standards relating to a breach of the duty of fair representation are clearly established. A union breaches its DFR if its conduct toward a member is arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). A union's ordinary negligence, without more, cannot constitute a breach of the duty of fair representation. A union member must prove more than mere negligence, *Ruzicka v. General Motors Corp.,* 649 F.2d 1207, 1212 (6th Cir.1981), *cert. denied,* 464 U.S. 982, 104 S.Ct. 424, 78 L.Ed.2d 359 (1983), or mistaken judgment, *Poole v. Budd Co.,* 706 F.2d 181, 183 (6th Cir.1983), on the union's part in order to establish a breach of the union's DFR. An international union, though neither the recognized collective bargaining representative nor a party to the contract, may be held liable for a local union's breach of the DFR where the international union is found to have authorized,

---

**12.** *Compare NLRB v. Local 212, UAW,* 690 F.2d 82 (6th Cir.1982) (narrowly construing *Finnegan* to apply only to an action arising under the LMRDA and involving a situation in which a union president selects officials to work with him and implement his policies).

encouraged, or ratified violations of section 301 of the LMRA, 29 U.S.C. § 185. *Compare Shimman v. Frank,* 625 F.2d 80 (6th Cir.1980) (applying this principle to violations of section 101 of the LMRDA, 29 U.S.C. § 411). A corporate employer may be held liable in a suit involving DFR claims against a union if it acted improperly and infringed the rights of the union member. *See, e.g., American Postal Workers Union, Local 6885 v. American Postal Workers Union,* 665 F.2d 1096, 1109 (D.C.Cir.1981); *see also United Independent Flight Officers, Inc. v. United Air Lines, Inc.,* 756 F.2d 1274, 1283 (7th Cir.1985) (employer is liable together with union for union's breach of its DFR if it acts in collusion with the union).

Defendants pigeonhole the plaintiff's allegations which support the DFR claim into seven categories:

(a) the manner in which an arbitrator was selected; (b) Local 912's practice of not using attorneys to represent grievants at arbitration hearings; (c) Local 912's denial of his request to have his personal attorney present; (d) Local 912's assignment of a newly-elected business manager, Wright, to represent him at the arbitration hearing; (e) Wright's decision not to call certain witnesses to testify at the hearing; (f) Wright's judgment in cross examining witnesses; (g) Local 912's practice of not recording or transcribing the hearing.[13]

Plaintiff does not challenge this definition of his claim. The Court will address two of the plaintiff's specific allegations.

■ Plaintiff argues that Local 912's failure to have a union attorney present for the arbitration proceeding and the union's refusal to permit the plaintiff to have a private attorney present constituted a breach of Local 912's DFR. This argument is meritless for the reasons stated in *Castelli v. Douglas Aircraft Co.,* 752 F.2d 1480 (9th Cir.1985). These reasons need not be repeated here. The Court notes that no provision in the collective bargaining agreement would entitle the plaintiff to counsel at an arbitration proceeding. Since Local 912 had never conducted an arbitration proceeding, the union had no established custom of providing an attorney to union members.[14] Local 912 elected to provide a union representative to assist the plaintiff at arbitration. The Court concludes that the plaintiff fails to state a claim for a breach of the union's DFR based on this allegation. *Grovner v. Georgia-Pacific Corp.,* 625 F.2d 1289, 1291 (5th Cir.1980).

■ Plaintiff also argues that Local 912's failure to assign the person who was the business manager at the time of Allen's discharge to handle the arbitration, rather than the newly-elected business manager, constituted a breach of Local 912's DFR. Plaintiff's objection, which appears to be based on Wright's inexperience, is difficult to fathom. Since Local 912 had never conducted an arbitration proceeding, the previous business manager would have had no more experience than Wright in representing a union member at an arbitration proceeding. *Compare Brown v. Trans World Airlines,* 746 F.2d 1354, 1359 (8th Cir.1984) (stating that the fact that the union member was represented by a "relatively inexperienced layman" while the company was represented by an experienced lawyer did not alone constitute a breach of the union's

---

**13.** Allied's Memorandum in Support of its Motion for Summary Judgment at 14–15.

**14.** Defendants have represented to the Court that it had never been the policy of Local 912 to utilize private attorneys during grievances. In fact, however, as has been pointed out by plaintiff and undenied by defendants, Allen's arbitration was the first ever conducted by Local 912 since being recognized in 1972. No "practice"

or "custom" regarding the use of attorneys had ever developed. The defendants have used this "custom" or "practice" line of reasoning in response to other DFR allegations as well. The Court is confident that this unfair characterization of the facts is attributable to a failure on the part of the defendants to complete discovery before filing dispositive motions.

DFR). Moreover, a union member is not entitled to demand the representative of his choice, provided the union's choice of representative does not work to deprive the employee of a fair and impartial hearing. *See Wells v. Southern Airways, Inc.,* 616 F.2d 107, 110 (5th Cir.), *cert. denied,* 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 78 (1980); *McFarland v. International Brotherhood of Teamsters, Local 745,* 535 F.Supp. 970, 977 (N.D.Tex.1982). Accordingly, the Court concludes that the plaintiff fails to state a claim for a breach of Local 912's DFR based on this allegation.

Defendants make numerous other arguments relating to each of plaintiff's allegations supporting the DFR claim. The Court does not find enough merit in these arguments to address them; material issues of fact clearly remain on each of these points. The Court in considering the remaining claims will work to preserve a balance between the protection of the rights of individual union members on one hand and the avoidance of undue interference in internal union affairs on the other. This balancing process will be considered at trial, and after further proof the Court may conclude that certain claims may not be considered in determining violations of the DFR. The plaintiff may present his case and the fact-finder may or may not infer from the totality of circumstances that the alleged conspiracy existed. Accordingly, the defendants' motions for summary judgment on the DFR claim must be denied.

*Right to Jury Trial*

■ Defendant Local 912 also argues that the plaintiff is not entitled to a jury trial in a case in which the only remaining claim involves an alleged breach of the duty of fair representation. This Court recently addressed this issue in *Grider v. Monin,* 637 F.Supp. 324 (M.D.Tenn.1985). The Court recognized that a "sharp division of authority" exists over the availability of jury trial in DFR cases brought under either the NLRA or the Railway Labor Act, 45 U.S.C. § 151 *et seq.* The Court adopted the

well-reasoned approach taken by the District of Columbia Circuit in *Quinn v. DiGiulian,* 739 F.2d 637 (D.C.Cir.1984), in finding that a right to jury trial is available to a plaintiff seeking both equitable and monetary relief for an alleged breach of the duty of fair representation brought under the NLRA. Plaintiff's request for equitable relief, i.e., reinstatement, in this case in addition to compensatory damages does not extinguish plaintiff's right to jury trial on the damages claim. Accordingly, defendant Local 912's motion to strike plaintiff's jury demand must be denied.

*Punitive Damages*

■ Defendant Local 912 also moves to strike plaintiff's request for punitive damages. It is well established that punitive damages may not be awarded under section 301 of the LMRA, 29 U.S.C. § 185. *See, e.g., Murphy v. IUOE, Local 18,* 774 F.2d 114, 134 (6th Cir.1985); *Quinn,* 739 F.2d at 647–48; *Farmer v. ARA Services, Inc.,* 660 F.2d 1096, 1106–07 (6th Cir.1981). Since the DFR claim is the only claim remaining in this action, Local 912's motion on this issue therefore must be granted.

In sum, the Court finds that the defendants' motions for summary judgment must be granted on all issues except the DFR claim. Defendant Local 912's motion to strike plaintiff's jury demand must be denied, and its motion to strike plaintiff's request for punitive damages must be granted.