934 F.2d 322
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Muhammad ABDUR-RAHMAN, Plaintiff-Appellant,
v.
John PIERON, Daniel Fox, and Jerry Kunzelman, Defendants-Appellees.
 No. 90-1485.
 United States Court of Appeals, Sixth Circuit.
 June 3, 1991.
 
 Before KEITH and DAVID A. NELSON, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal by the plaintiff in a civil rights action from an order awarding him attorney fees in an amount less than he had sought. The plaintiff contends: (1) that the district court erred in awarding only sixty percent of the amount requested; (2) that the district court erred in refusing to award any fee for the hours spent litigating the fee question itself; and (3) that this court should impose sanctions against the defendants pursuant to Rule 11, Fed.R.Civ.P., for failure to file a proper brief on appeal. We do not find the plaintiff's first and third contentions persuasive, but we shall increase the fee award to cover part of the cost of litigating the fee question.
 
 
 2
 * The plaintiff, Muhammad Abdur-Rahman, is an inmate at the State Prison of Southern Michigan. He filed an action pursuant to 42 U.S.C. Sec. 1983 against five prison officials: George Graham, John Pieron, Daniel Fox, Officer Fredrick, and Jerry Kunzelman. Before trial the district court (Freeman, J.) entered orders of dismissal as to defendants Graham and Fredrick. The case against Messrs. Fox, Kunzelman, and Pieron was tried to a jury. A verdict was returned in favor of the plaintiff on one of two charges against Mr. Fox. On the second charge against Mr. Fox, and on the charges against Messrs. Pieron and Kunzelman, the jury found for the defendants. Although the plaintiff had requested compensatory and punitive damages in five-figure amounts, the jury awarded him only $30 in toto.
 
 
 3
 The plaintiff applied for an award of attorney fees against Mr. Fox pursuant to 42 U.S.C. Sec. 1988. In the application, and in a supplemental application that followed it, the plaintiff asserted: (1) that Mr. Fox should be responsible for sixty percent of the fees incurred; (2) that the two claims against Mr. Fox were sufficiently "related"--within the meaning of Hensley v. Eckerhart, 461 U.S. 424, 440 (1983)--to justify the award of attorney fees for time spent on both claims; (3) that his attorney's billing rates of $125/hour for in-court time, $100/hour for out-of-court time, and $65/hour for travel time were reasonable; and (4) that he should be awarded attorney fees for time spent litigating the fee question itself.
 
 
 4
 The defendant filed objections to the fee petition, but these objections were properly dismissed as untimely.
 
 
 5
 On its own examination of the record, the district court found that the proposed sixty-forty division was reasonable; that the plaintiff's claims against Mr. Fox were indeed "related:" and that his attorney's billing rates were reasonable. The district court also noted, however, that the "plaintiff obtained only limited success, and therefore full compensation is excessive." The court made a forty percent reduction in the amount claimed. As to a fee for the time spent litigating the fee question, the court stated that it could not "think of any purpose of either 42 U.S.C. Sec. 1983 or 42 U.S.C. Sec. 1988 that would be advanced by awarding attorney's fees in this case with its $30.00 judgment, for the time spent in determining the fee itself." This appeal followed.
 
 II
 
 6
 The district court did not commit reversible error in awarding less than the plaintiff had requested.
 
 
 7
 It is well settled that "the district court has discretion in determining the amount of a fee award." Hensley, 461 U.S. at 437. As the Supreme Court has explained, "[t]his is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." Id. Accordingly, we may reverse the district court's award only upon a showing that the lower court has abused its discretion. Scales v. J.C. Bradford & Co., 925 F.2d 901, 909 (6th Cir.1991).
 
 
 8
 As to the first claim advanced by the plaintiff in the case at bar, no such showing has been made. Although it is true that "reasonable attorney's fees under Sec. 1988 are not conditioned upon and need not be proportionate to an award of money damages," Riverside v. Rivera, 477 U.S. 561, 576 (1986), the Supreme Court has expressly stated that "where the plaintiff [has] achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." Hensley, 461 U.S. at 440. Accord, Allen v. Allied Plant Maintenance Co. of Tennessee, Inc., 881 F.2d 291, 299-300 (6th Cir.1989). The jury in this case awarded only nominal damages in an amount that was less than one percent of the damages requested by the plaintiff--a reduction of more than ninety-nine percent--and the district court can hardly be said to have abused its discretion in reducing the fee claim by a mere forty percent.[1]
 
 
 9
 The district court did err, however, in declining to award an attorney fee for the time spent litigating the fee question itself. As we stated in 1979,
 
 
 10
 "[w]hen Congress passed the [Civil Rights Attorney's Fees Awards] Act its basic purpose was to encourage the private prosecution of civil rights suits through the transfer of the costs of litigation to those who infringe upon basic civil rights. If a successful party in a civil rights suit is awarded attorney's fees under the Act and he cannot secure attorney's fees for legal services needed to defend the award on appeal, the underlying Congressional purpose for the Act would be frustrated. We conclude that implementation of Congressional policy requires the awarding of attorney's fees for time spent pursuing attorney's fees...." Weisenberger v. Huecker, 593 F.2d 49, 53-54 (6th Cir.) (emphasis supplied), cert. denied, 444 U.S. 880 (1979).
 
 
 11
 Under normal circumstances, we would remand the case to the district court for recalculation of the award. Because Judge Freeman is no longer living, however, and in the interest of judicial economy, we shall determine an appropriate award ourselves.
 
 
 12
 The papers filed with this court indicate that the plaintiff's attorney spent 8.2 hours on the preparation of the fee application and 12.5 hours on his reply to the defendants' objections. Because the district court expressly found that the out-of-court rate of $100/hour was reasonable, and because the district court found that any award should be reduced by forty percent because of the plaintiff's limited success, we shall award an additional attorney fee in the amount of $1,242.[2] With this additional award, we believe that the plaintiff will have been granted everything he could reasonably expect in the way of fees, including fees incurred in the prosecution of this appeal.
 
 
 13
 With respect to the plaintiff's request for Rule 11 sanctions, finally, it is well settled that Rule 11 "applies to 'every pleading, motion, and other paper' signed and filed in the district courts, but not ordinarily to those filed in the courts of appeals." Webster v. Sowders, 846 F.2d 1032, 1040 (6th Cir.1988). This court may, of course, impose sanctions pursuant to its inherent powers, see Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-765 (1980), but we decline to do so here.
 
 
 14
 The district court's order is AFFIRMED in part and VACATED in part, and the plaintiff is AWARDED an additional attorney fee in the amount of $1,242.
 
 
 15
 KEITH, Circuit Judge, dissenting.
 
 
 16
 Because I believe that the trial court abused its discretion in reducing the fee award on the grounds plaintiff received only a very small award compared to the relief sought, I dissent as to that part of the majority opinion.
 
 I.
 
 17
 Prevailing plaintiffs in civil rights suits under 42 U.S.C. Sec. 1983 are entitled to reasonable attorney fees. 42 U.S.C. Sec. 1988; Northcross v. Board of Education of Memphis City Schools, 412 U.S. 427 (1973). To decide what fee is reasonable, the court should consider the amount of damages awarded as one of twelve factors known as the Johnson factors. Hensley v. Eckerhart, 461 U.S. 424, 430 (1983) (adopting the factors in Johnson v. Georgia Highway Express, Inc. 488 F.2d 714 (5th Cir.1974)). The results obtained by a suit is a particularly important factor. Id. at 434. It is improper, however, to require that a fee be proportional to the damages awarded. City of Riverside v. Rivera, 477 U.S. 561, 567 (1986). The majority in the instant case finds it appropriate to lower the fees awarded based on the proportionality between the amount of damages requested and the amount awarded. See Majority Opinion at 3. While Hensley requires an examination of the degree of success, I disagree that the ratio of damages requested versus damages awarded is an appropriate measurement of that success. Because I think the analysis applied was contrary to law, I would find an abuse of discretion.
 
 A.
 
 18
 The Second, Fifth, and Seventh circuits have addressed this issue, finding that a low damage award is not proper grounds for reducing a fee award below the amount necessary to achieve the success accomplished where there is a vindication of civil or constitutional rights. These are more persuasive than the analysis of the Eleventh Circuit which approved of such a reduction, but has been undermined subsequently.
 
 
 19
 The Fifth Circuit was faced with this question in Cobb v. Miller, 818 F.2d 1227 (5th Cir.1987). In Cobb, the plaintiff argued that it was error to reduce the award below the lodestar figure for the reason that he was awarded comparatively nominal damages and because he was successful as to only one of three defendants. Id. at 1233. The Fifth Circuit agreed that such a reduction was error, holding that:
 
 
 20
 while the amount of damages awarded is one factor to be considered in setting the amount of attorney's fees, the district court must also carefully consider any other relevant Johnson factors. In the absence of other Johnson factors justifying a reduction in a fee award, a district court should not reduce the fee award solely because of a low damages award.
 
 
 21
 Id. at 1235. The Fifth Circuit found that such an approach would lead to a requirement of proportionality between the fee and the amount of damages, as expressly rejected by the Supreme Court in Rivera. Id.
 
 
 22
 The Second Circuit has held that a reduction in attorney's fees based on a low award is "error unless the size of the award is the result of the quality of representation." DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir.1985). There is nothing in the record that indicates that nominal damages in the instant case was the result of poor representation.
 
 
 23
 The Seventh Circuit has also adopted the understanding that a reasonable fee is the cost of litigating a successful claim, even if the damage award is much less than the amount requested. In Ustrak v. Fairman, 851 F.2d 983 (7th Cir.1988), the Seventh Circuit rejected the claim that there should have been a reduction in attorney's fees based on the fact that the plaintiff recovered on only one of six counts in the complaint and recovered damages that were modest both absolutely and in relation to what the plaintiff had sought in his complaint. Id. at 988. The court noted that there is an irreducible fixed cost to litigation and that a plaintiff must be able to recover that cost in order to hire a lawyer. The court went on to award a fee that would pay for the hours to litigate the claim, despite the fact that the fee was twenty-one times as great as the damages, in order to provide compensation in the amount of legal expenses plaintiff would have borne if his suit had been confined to the ground on which he prevailed plus related grounds. Id.
 
 
 24
 The Eleventh Circuit has ruled, contrary to these three circuits, that reductions were appropriate based upon damage awards that were small compared to the amount requested. In Popham v. City of Kennesaw, 820 F.2d 1570 (11th Cir.1987), the court held that comparing the amount of damages a plaintiff requested with the amount of damages he received was an appropriate basis for reducing the lodestar amount. Id. at 1581. There, however, the court noted that "much of the trial involved the presentation of matters seemingly unrelated to the [successful] claim." Thus the facts in Popham may have made such analysis appropriate in order to determine what part of the related hours had been expended for the successful claim. That is distinct from the facts in the instant case where all but one of the losing claims had been isolated and the judge did not find that much of the effort was devoted to the unsuccessful related claim.
 
 
 25
 The Eleventh Circuit's reliance on a comparison between the amount of damages requested and the amount awarded was based on Justice Powell's concurrence in Rivera. The Eleventh Circuit further supported the relevance of the comparison by reading a negative inference into the Hensley statement that it was not necessarily significant that a prevailing plaintiff did not receive all of the relief requested. The Popham court improperly inferred from that statement that the opposite is true--that such a comparison must be relevant. Id. The last reason given by the Popham court was that courts had made such comparisons. The court cited two cases. In one case that was also from the Eleventh Circuit, Erkins v. Bryan, 785 F.2d 1538 (11th Cir.), cert. denied, 479 U.S. 960 (1986), the comparison between the amount sought and the amount of damages awarded was made when the court criticized the proportion of fees sought compared to damages. The relevance of a fees to damages comparison was rejected by the Supreme Court shortly thereafter in Rivera. Rivera, 477 U.S. at 576. The other case Popham relied on, Nephew v. City of Aurora, 766 F.2d 1464 (10th Cir.1985), was vacated and the opposite conclusion was reached by the court en banc. Nephew v. City of Aurora, 830 F.2d 1547 (10th Cir.1987) (en banc) (finding no abuse of discretion where the district court refused to lower the fee from the lodestar amount despite receipt of only nominal damages where the civil rights judgment was more important than the amount of monetary damages), cert. denied, 485 U.S. 976 (1988).
 
 B.
 
 26
 Not only does the law in the great preponderance of other circuits directly addressing this issue reject the analysis applied by the district court and accepted by the majority, a careful analysis of the Supreme Court's relevant opinions indicates that the substantial majority of the circuits have correctly refused to lower fee awards based on a disparity between the amount of damages requested and the amount of damages awarded.
 
 
 27
 The Supreme Court rejected proportionality between the award of attorney's fees and the damages in City of Riverside v. Rivera, 477 U.S. 561 (1986). In Rivera, a fee award was challenged on the grounds that it exceeded the damages awarded. A plurality of the court found that Congress, in enacting 42 U.S.C. Sec. 1988, provided a means to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms. The plurality noted that a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards. Rivera, 477 U.S. at 574. The plurality also noted that Congress sought to foster the benefit of a civil rights suit's deterrent effect. Id. at 575. This benefit of a successful civil rights suit is not reflected in the amount of a damages award but is protected in the plurality's holding that attorney's fees in such cases should be paid for all time reasonably expended on the matter, despite a small damages award. Id. The plurality found that since Congress' purpose was to enable plaintiffs to enforce the civil rights laws even where the damages would not otherwise make it economically feasible, the fees must enable parties to recover what it costs them to vindicate their rights in court. Id. at 578 (citing S. Rep No. 1011, 94th Cong., 2d Sess. 2 (1976)).[1]
 
 
 28
 The proportionality requirement applied by the district court in the instant case is somewhat different from that criticized in Rivera, but the difficulties are the same. The district court in the instant case apparently sought some, though not strict, proportionality between the amount of damages awarded and the amount of damages requested. This was error for the same reasons proportionality was error in Rivera --it precludes a plaintiff from receiving attorney's fees for all of the hours necessary to litigate a successful claim. The proportionality is error even though the Supreme Court has instructed district courts to consider the amount of damages in determining an appropriate fee.
 
 
 29
 The purpose for looking at degree of success is to reward only successful litigation even in the circumstance where the successful litigation is related to the unsuccessful. While the Court in Hensley directed courts to examine the degree of success, it also directed the district court to do this examination "in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435. Where the hours spent were those necessary to achieve the success achieved, there should be no reduction in the fee based on a lack of success. This is reflected in the process of examining success set out by the Court in Hensley. Applying the Supreme Court's decision in Hensley, we held in In re Lewis, 845 F.2d 624 (6th Cir.1988), that if litigation can be divided into discrete parts, "then those claims may be analyzed in order to parse out those that were successful from those that were not." The court continued "[i]f, however, the case effectively revolves around one claim and a core of common facts, ... then the 'overall result' will remain the primary factor in determining counsel fees." Id. at 631-32. The clear implication from Lewis is that once the district court has parsed out the unsuccessful claims, there is no need to examine overall success. The only purpose for an examination of success is to approximate the parsing process where parsing itself is impossible.[2] Thus, a district court is first to decide whether the claims are related. If they are not related, there is no need to examine the amount of success, since compensation for unsuccessful claims can be easily parsed out from the successful claims. If the claims are related, the district court should look at the degree of success, along with the other Johnson factors, to aproximate what fees were appropriate and necessary to litigate the successful, but not the unsuccessful, related claims.
 
 
 30
 Lewis indicates that once the district court in this case had parsed out all unsuccessful claims, the only purpose of looking at the overall success was to determine to what extent the remaining hours applied to the successful retaliation claim but not to the substantive due process claim. The majority in the instant case, however, compares the award granted to that which the plaintiff had requested on all of the claims, including those that had been parsed out.
 
 
 31
 While the analysis prescribed by the Supreme Court in Hensley requires a district court to dissect out the unsuccessful claims and only award fees to compensate an attorney for the hours necessary to bring the successful claims, the district court's action here has the effect of "decimating the total hours claimed with arbitrary percentages." See Northcross v. Board of Educ. of Memphis City Schools, 611 F.2d 624, 636 (6th Cir.1979), cert. denied, 447 U.S. 911 (1980). This is an effect not required by Hensley and one which is a serious deterrent to civil rights litigation.
 
 
 32
 The legislative history makes clear that Congress intended Sec. 1988 to enable plaintiffs to bring civil rights cases even if they are economically inefficient. Rivera, 477 U.S. at 578. Some of the benefits to society of vindication of civil rights are not quantifiable,[3] and thus a large expenditure of time to accomplish a vindication of a right which has only a small price tag is appropriate.
 
 
 33
 Hensley cannot mean that the district court in its discretion can determine that vindication of a civil right is only worth sixty percent of the hours it takes to litigate it. That is in effect what the court determined in the instant case. The court had already eliminated all of the claims against the other defendants from the lodestar fee. It thus found those claim separable, or not related for 42 U.S.C. Sec. 1988 purposes. It then looked at the two claims against Fox--a substantive due process claim and a first amendment retaliation claim. The district court found the two intertwined. The jury found for the defendant on one, and against the defendant on the other. The court did not make a finding that the claims were dissimilar so that hours did not apply to both claims and were therefore not necessary for the successful claim. Nonetheless, the district court reduced the fee because plaintiff's success was small compared to that requested in the complaint. This reduction was an abuse of discretion.
 
 II.
 
 34
 Three of four circuits that have directly addressed this issue found that a low damage award is not proper grounds for reducing a fee award below the amount necessary to achieve the success accomplished. Their analysis is more persuasive than the analysis of the Eleventh Circuit. The reasoning of Lewis demonstrates that it is inappropriate to examine the amount of damages awarded except for the purposes of determining what part of the fee is attributable to the success of the case. The award size is therefore not relevant for the purpose of concluding that a small award indicates a case that vindicated a civil right was not worth the hours required to reach that victory. A principle that provided for attorney's fees in amounts less than that required to litigate the successful claims in a suit simply because of a small monetary damages award would have a very chilling effect on meritorious civil rights litigation and is contrary to Sec. 1988.
 
 
 35
 I would, therefore, award the lodestar fee as computed prior to the forty percent reduction for "lack of success." At a minimum, this case should be remanded to determine whether the degree of success on the two claims against Fox indicates that a reduction is necessary to avoid compensation for the portion of the fee that would be for efforts that were unsuccessful and were not hours also required to litigate the successful claim.
 
 
 
 [1]
 An abuse of discretion is defined as "a definite and firm conviction that the trial court committed a clear error of judgment." Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989). The Supreme Court's decision in Rivera, supra, teaches that fee awards should not "necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers," 477 U.S. at 574, but it also teaches that the amount of damages recovered is "certainly relevant to the amount of attorney's fees to be awarded under Sec. 1988." Id. The disparity between 40% and 99.83% demonstrates that the district court did not attempt a proportional reduction but merely considered the size of the judgment to be "relevant."
 
 
 [2]
 (8.2 hours + 12.5 hours) + $100 per hour + 60%= $1,242
 
 
 [1]
 Admittedly, Justice Powell in his concurrence in Rivera seems to contemplate a quantification of the benefit of a successful civil rights case. He apparently believes that there is support for an interpretation of Sec. 1988 that would incorporate into the word "reasonable" an economic cost/benefit analysis of an unquantifiable value of a civil rights claim, rather than a determination of what is the cost it takes to actually litigate a claim without any wasted time or money. In fact, in his footnote three, he indicates that it is a rare case that the nonmonetary advantages to the public, as distinct from the litigant, would justify a greatly disproportionate fee award. Rivera, 477 U.S. at 585-86, 586 n. 3 (Powell, J., concurring). This implies that Congress thought courts would be able to place a dollar value on all aspects of civil rights claims, and more importantly, intended for courts to make such economic evaluations of vindication of constitutional rights. Justice Powell implicitly calls for quantifying the unquantifiable. Justice Rehnquist, recognizing the difficulties of relying on monetary values where there are nonpecuniary values at stake in the litigation, distinguished the facts of Rivera from litigation where nonpecuniary interests are disputed. Id. at 594-95 (Rehnquist, J., dissenting)
 
 
 [2]
 While unpublished opinions are not binding precedent, I would note that in Simmons v. Debottis, No. 87-1833 (6th Cir. Sep. 19, 1988), a panel of the Sixth Circuit equated the examination of whether claims are interrelated with the examination of what hours were reasonable and necessary to bring the successful as opposed to the unsuccessful claims. Id. at 12. The panel further instructed the district court to keep in mind, when considering a small damages award, the concept of a "private attorney general" effectuating a societal benefit in civil rights cases when it clarified its fee award on remand. Id. at 13
 
 
 [3]
 This court has noted:
 As a basic element of our fundamental law, the First Amendment's protections of speech, press and assembly serve not only as an instrument of successful self government, but as symbols of the kind of society we wish to be. Because it serves more than merely instrumental goals, the right of free speech may be violated without accompanying consequential or "actual" injury.
 Walje v. City of Winchester, Ky., 773 F.2d 729 (6th Cir.1985).